IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

INFINITY CARE OF TULSA, )
)
      Plaintiff, )
)
v. ) Case No. 09-CV-723-GKF-FHM
)
KATHLEEN SEBELIUS, Secretary of )
United States Department of Health )
and Human Services, )
)
      Defendant. )

## OPINION AND ORDER

On the 23rd day of February, 2011, this matter came on for hearing on cross motions for summary judgment. Linda Gale Scoggins and Sarah J. Glick appeared for the plaintiff; Christopher E. Maxwell, Daniel Wolfe, and Cathryn Dawn McClanahan appeared for the defendant. For the reasons set forth below, defendant's Motion for Summary Judgment [Doc. No. 13] is granted in part and denied in part, and plaintiff's Motion for Partial Summary Judgment [Doc. No. 14] is granted.

Plaintiff Infinity Care of Tulsa ("Infinity") is a Medicare certified hospice provider in Tulsa, Oklahoma. Pursuant to a program established under Title XVIII of the Social Security Act (the "Medicare Act"), Infinity receives reimbursement for hospice care provided to Medicare beneficiaries. Infinity received actual payments from Medicare in the amount of $5,177,442.01 for hospice care provided during fiscal year 2007. *See* Exhibit "C" to the Complaint. On May 27, 2009, using a "hospice cap regulation" to determine the "number of beneficiaries" Infinity served in fiscal year 2007, Medicare sent Infinity notice that actual payments for fiscal year 2007 had exceeded the cap amount by $2,014,961, and demanded repayment of the overpayment. *Id.* Infinity challenges the validity of the hospice cap regulation – 42 C.F.R. § 418.309(b)(1) – on the

grounds that it does not comply with its parent statute, 42 U.S.C. § 1395f(i)(2)(C).

On August 11, 2009, Infinity timely filed an appeal of the cap determination with Medicare's Provider Reimbursement Review Board ("PRRB"). The PRRB found it was without the authority to decide the legal question of whether the regulation was valid, and, pursuant to 42 U.S.C. §1395oo(f)(1), granted Infinity's request for expedited judicial review. Infinity then filed this action.

In her Motion for Summary Judgment, defendant Kathleen Sebelius, Secretary of the United States Department of Health and Human Services (the "Secretary"), argues that Infinity lacks Article III standing to challenge the regulation, that Infinity did not meet the amount in controversy necessary to obtain a hearing before the PRRB under 42 U.S.C. § 1395oo (a) and 42 C.F.R. § 405.1839, and that 42 C.F.R. § 418.309(b)(1) does not constitute a taking under the Fifth Amendment as Infinity claims in Paragraph 36 of its Complaint.

Infinity argues in its motion for partial summary judgment that 42 C.F.R. § 418.309(b)(1) is invalid, that Infinity has standing to challenge the regulation, that 42 C.F.R. § 418.309(b)(1) should be set aside and its use be enjoined, and that this matter should be remanded to calculate the amounts due and owing in accordance with the statute.

**Legal Standard for Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, a court must examine the

factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995). The movant bears the burden of showing the absence of a genuine issue of material fact. *Id.* If the movant carries this initial burden, the non-movant must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. *Id*.

**Article III Standing**

The initial issue posed by the competing motions for summary judgment is whether Infinity has Article III standing to challenge the regulation.

As the party invoking federal jurisdiction, Infinity bears the burden of establishing its standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). To establish Article III standing, a plaintiff must demonstrate first that he or she has suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992). When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred at the summary judgment stage in order to establish standing depends considerably upon whether the plaintiff is itself an object of the action at issue. *Id.* If it is, there is ordinarily little question that the action or inaction has caused it injury, and that a judgment preventing or requiring the action will redress it. *Id.* at 561-562.

Numerous courts have concluded that hospices have standing to challenge the hospice cap reimbursement regulation when they are being directly subjected to the allegedly unlawful regulation. *See Affinity Healthcare Serv., Inc. v. Sebelius*, — F.Supp. 2d —, 2010 WL 4258989 n.12 (D.D.C. 2010); *Russell-Murray Hospice, Inc. v. Sebelius,* 724 F.Supp. 2d 43, 53-54 (D.D.C. 2010); *Tri-County Hospice, Inc. v. Sebelius*, — F.Supp. 2d —, 2010 WL 784836 at *3 (E.D. Okla. 2010); *Lion Health Serv., Inc. v. Sebelius*, 689 F.Supp. 2d 849, 854-855 (N.D. Tex. 2010); *Los Angeles Haven Hospice, Inc. v. Leavitt,* 2009 WL 5868513 (C.D. Cal. 2010). The Secretary's use of §418.309(b)(1) to determine the amount of Infinity's overpayment obligation gives Infinity standing to challenge that regulation. If the regulation is invalid, its use constitutes an injury-in-fact because the amounts Infinity must refund were calculated using that regulation. Moreover, the Court finds that Infinity has sufficiently established a substantial probability that a significant portion of Infinity's $2,014.961 calculated overpayment obligation has resulted from using the regulation. Infinity has also demonstrated a causal connection between the asserted repayment injury and the Secretary's use of the regulation, which can result in undercounting the number of Medicare beneficiaries served by a hospice during a fiscal year. Finally, a favorable decision will redress Infinity's claimed injury – if the court invalidates the regulation, the Secretary will no longer be able to use it to calculate Infinity's obligation, which would constitute substantial and meaningful relief. *Lion Health Services*, 689 F.Supp. 2d at 855. "[T]he relevant inquiry is whether ... the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976). Infinity need not show that a favorable decision will negate the entire $2,014.961overpayment obligation calculated by the Secretary's fiscal intermediary. *Id.* The court therefore concludes that Infinity has Article III

standing to challenge the regulation.

## Administrative Amount in Controversy

The Secretary argues that the PRRB did not properly resolve whether the amount in controversy in this case exceeds $10,000. Pursuant to 42 U.S.C. § 1395*oo*(a)(2), the PRRB may hear a matter if the amount in controversy is $10,000 or more. Under 42 C.F.R. § 405.1839, a hospice provider seeking a Board hearing must demonstrate that if its appeal is successful, the provider's total program reimbursement for each cost reporting period under appeal would increase by at least $10,000. The Secretary contends that the PRRB merely adopted Infinity's estimate of the amount in controversy when it granted the request for expedited judicial review ("EJR") of Infinity's appeal.

The Secretary's argument must be rejected because the PRRB properly determined that the amount in controversy is $10,000 or more. The "amount in controversy" requirement set forth in § 1395*oo*(a)(2) "is nothing more than a jurisdictional provision, comparable to the $75,000 amount-in-controversy provision applicable to diversity cases under 28 U.S.C. § 1332." *Russell-Murray Hospice, Inc.,* 724 F.Supp. 2d at 56 (quoting *Baystate Med. Ctr. v. Leavitt*, 545 F.Supp. 2d 20, 40 n.26 (D.D.C. 2008), *amended on other grounds*, 587 F.Supp. 2d 37 (D.D.C. 2008)). The Supreme Court has held, in the comparable context of diversity jurisdiction, that the sum claimed by the plaintiff controls if the claim is apparently made in good faith. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Compassionate Care v. Sebelius*, 2010 WL 2326216 at *2 (W.D. Okla. 2010); *IHG Healthcare v. Sebelius*, 717 F.Supp. 2d 696, 706 (S.D. Tex. 2010). In its Request for Expedited Judicial Review to the PRRB, Infinity stated that it would be subject "to

little or no demand for repayment" of the Secretary's $2,014,961 reimbursement claim, and that the amount in controversy is greater than $10,000.00.[1] Upon review of Infinity's submissions, the PRRB expressly found that "[t]he documentation shows that the estimated amount in controversy exceeds $10,000 . . ." The Secretary offers no authority for her argument that the PRRB was required to make "a specific jurisdictional finding supported by substantial evidence," a more arduous task than federal district courts undertake when evaluating their own subject matter jurisdiction in diversity cases. *Id.* Because it was facially apparent to the PRRB that Infinity sought recovery in good faith in an amount greater than the jurisdictional minimum, this court concludes that the PRRB properly determined that the administrative amount in controversy requirement had been satisfied.

This court concurs with the Secretary that the EJR provision conditions a provider's right to request EJR on its satisfaction of the requirements for a hearing before the PRRB. *Affinity Healthcare,* — F. Supp. 2d at —, 2010 WL 4258989 at *10; 42 U.S.C. § 1395oo(a)(2) and (f)(1). In this case, the provider satisfied the amount in controversy requirement and therefore could request EJR from the PRRB.

---

[1] See Administrative Record at Dkt. 25, p. 11. During the hearing on the cross motions for summary judgment, Infinity's counsel conceded that a majority of the reimbursement claim will remain upon recalculation in accordance with the terms of the statute, but contended that the regulation undercounted as many as 20 Medicare beneficiaries for fiscal year 2007. Insofar as the hospice cap amount for fiscal year 2007 was $21,410.04 (see Exhibit "C" to the Complaint), the amount in controversy is at least $428,200.80 (21.25% of the Secretary's total reimbursement claim). Although this allegation was not before the PRRB, it reconfirms the good faith nature of the jurisdictional allegations Infinity made to the PRRB.

**Infinity's Fifth Amendment Takings Claim**

In Paragraph 36 of its Complaint, Infinity alleges that 42 C.F.R. § 418.309(b)(1) "amounts to unlawful taking of private property for public use without just compensation in violation of the Fifth Amendment of the United States Constitution." The Secretary seeks summary judgment on that claim, arguing among other things, that where a service provider voluntarily participates in a price-regulated program or activity, there is no legal compulsion to provide service and thus there can be no taking. Infinity offered no response in its brief and conceded at oral argument that the Secretary is entitled to partial summary judgment on the claim.

**The Challenged Regulation is Invalid**

Infinity receives reimbursement from the federal government for hospice care provided to Medicare beneficiaries. The total payment to a hospice for an accounting year is limited by an aggregate provider cap, and payments in excess of the aggregate cap must be refunded by the hospice provider. The aggregate annual provider cap is calculated for each hospice care provider by multiplying the applicable "cap amount" per beneficiary[2] by the "number of Medicare beneficiaries" in the hospice program that year. 42 U.S.C. §1395f(i)(2)(A). Pursuant to the statute, the "number of Medicare beneficiaries" is to be calculated as follows:

> For the purposes of subparagraph (A), the "number of medicare beneficiaries" in a hospice program in an accounting year is equal to the number of individuals who have made an election under subsection (d) of this section with respect to the hospice program and have been provided hospice care by (or under arrangements made by) the hospice program under this part in the accounting year, *such number reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year* or under a plan of care

---

[2] The cap amount per beneficiary in fiscal year 2007 was $21,410.04.

7

established by another hospice program.

42 U.S.C. §1395f(i)(2)(C) (emphasis added). While the statute directs that the number be reduced to reflect the proportion of hospice care provided in previous or subsequent accounting years, the regulation purporting to implement the statute provides:

> Each hospice's cap amount is calculated by the intermediary by multiplying the adjusted cap amount determined in paragraph (a) of this section by the number of Medicare beneficiaries who elected to receive hospice care from that hospice during the cap period. For purposes of this calculation, the number of Medicare beneficiaries includes–
>
> > (1) *Those Medicare beneficiaries who have not previously been included in the calculation of any hospice cap and who have filed an election to receive hospice care, in accordance with §418.24, from the hospice during the period beginning on September 28 (35 days before the beginning of the cap period) and ending on September 27 (35 days before the end of the cap period).*

42 C.F.R. §418.309(b) (emphasis added). Thus, under section 418.309(b)(1), a Medicare beneficiary who first sought hospice care on September 27, 2007 would be allocated entirely to the fiscal year ending October 31, 2007 for the purpose of determining the "number of beneficiaries" in that year, while a Medicare beneficiary who first entered hospice care on September 28, 2007 would be allocated entirely to fiscal year 2008.

On February 13, 2008, in the case of *Sojourn Care, Inc. v. Michael O. Leavitt*, Case No. 07-cv-375-GKF-PJC, this court declared that 42 C.F.R. § 418.309(b)(1) was invalid. However, the court deferred decision on certain other forms of relief requested by Sojourn until after a remand to the PRRB for additional proceedings could be completed. Sojourn Care appealed the decision to the Tenth Circuit Court of Appeals, and the Secretary cross-appealed. On June 30, 2010, the Circuit dismissed the appeals for lack of a final judgment. On November 18, 2010, Sojourn Care petitioned the U.S. Supreme Court for a Writ of Certiorari. The Supreme Court

denied the Petition on January 18, 2011.

It appears that every court that has considered the issue has held that 42 C.F.R. § 418.309(b)(1) is invalid. *See, e.g., Affinity Healthcare*, — F.Supp. 2d at —, 2010 WL 4258989 at *12 (D.D.C. 2010); *Compassionate Care Hospice*, 2010 WL 2326216 at *4; *Tri-County Hospice, Inc.*, — F.Supp. 2d —, 2010 WL 784836; *Lion Health Services, Inc.*, 689 F.Supp. 2d at 856-857; *IHG Healthcare, Inc.*, 717 F.Supp. 2d at 707-709; *Hospice of New Mexico, LLC v. Sebelius*, 691 F.Supp. 2d 1275, 1288-1293(D.N.M. 2010); and *Autumn Light Hospice v. Sebelius*, 2010 WL 102525 (W.D. Okla. 2011). It is unnecessary to state the reasons again. For the reasons previously stated by this and numerous other courts, this court finds and declares that 42 C.F.R. § 418.309(b)(1) is invalid, and Infinity's Motion for Partial Summary Judgment should be granted.[3]

**Relief to be Granted**

The court concludes that Infinity is entitled to the following relief:

1. A declaration that 42 C.F.R. §418.309(b)(1) is invalid;

2. A declaration that the Secretary's calculation of Medicare overpayments to Infinity for fiscal year 2007 is invalid;

3. An injunction enjoining the Secretary from further application of the invalid regulation to Infinity;

4. An injunction enjoining the Secretary from demanding and/or collecting repayment of the alleged 2007 overpayment; and

---

[3] Counsel for Infinity clarified at oral argument that the Motion was one for partial summary judgment only because it did not address Infinity's Fifth Amendment Takings Claim. Insofar as the Secretary is entitled to summary judgment on that claim, all claims have now been adjudicated.

5. An order remanding the matter to the PRRB for determination of the amount of overpayment based on application of the statute rather than the invalid regulation.

The court further concludes that the Secretary is entitled to Judgment on Plaintiff's claim that 42 C.F.R. § 418.309(b)(1) constitutes a taking in violation of the Fifth Amendment.

## Conclusion

For the reasons set forth above, defendant's Motion for Summary Judgment [Doc. No. 13] is granted in part and denied in part, and plaintiff's Motion for Partial Summary Judgment [Doc. No. 14] is granted.

ENTERED this 28th day of February, 2011.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma